UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| AMICA MUTUAL INSURANCE COMPANY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| AMACA INVESTMENTS, INC., AMACA INSURANCE & FINANCIAL SERVICES, INC. and CAREN ADAMS, | : C.A. No. |
| | : |
| | : |
| | : |
| Defendants. | : |

# COMPLAINT

Plaintiff, Amica Mutual Insurance Company ("Amica"), brings this action for trademark infringement and federal and state unfair competition against Defendants, Amaca Investments, Inc., Amaca Insurance & Financial Services, Inc. and Caren Adams. By this Complaint, Amica seeks injunctive relief and monetary damages and alleges as follows:

## INTRODUCTION

1. Amica is a well-known and leading provider of high quality insurance products and services throughout the United States. It has developed enormous goodwill and brand recognition among the consuming public in its federally registered AMICA trademarks. Defendants have engaged in the unauthorized use of the AMICA trademarks.

## JURISDICTION AND VENUE

2. Amica brings this action for federal trademark infringement in violation of Section 32(a) of the Lanham Act, 15. U.S.C. §1114(a); unfair competition and false designation of origin in violation of Section 43(a) of the Lanham At, 15 U.S.C. §1125(a); cybersquatting in violation of the Lanham Act Section 15 U.S.C. §1125(d); and unfair competition, trademark

55415453 v1

infringement, tortious interference with prospective business relationship, and unjust enrichment under Rhode Island law.

3. This Court has original jurisdiction under 15 U.S.C. §1121(a) and 28 U.S.C. §§1331, 1338(a) and 1338(b). This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. §1367(a).

4. This Court has jurisdiction over Defendants and venue is properly laid in this Court under 28 U.S.C. §§ 1391(b) and (c), inasmuch as Defendants have engaged and have attempted to engage residents of the forum state through their interactive websites, combined with the intentional nature of the trademark claims at issue and the Defendant's knowledge that their conduct would harm, and did in fact cause harm, to Plaintiff in this forum. Upon information and belief, these Defendants have purposefully availed themselves of the benefits of this forum such that maintenance of suit for such acts in this forum would not violate due process.

## PARTIES

5. Plaintiff Amica is a corporation duly organized and existing under the laws of the State of Rhode Island and having executive offices located in Lincoln, Rhode Island.

6. Upon information and belief, Defendant Amaca Investments, Inc. is a corporation organized and existing under the laws of the State of California and having its principal place of business in Fontana, California.

7. Upon information and belief, Defendant Amaca Insurance & Financial Services, Inc. is a corporation existing under the laws of the State of California and having its principal place of business in Fontana, California.

8. Upon information and belief, Caren Adams is an individual who resides in Fontana, California and is an insurance agent for the Allstate Insurance Company.

9. Upon information and belief, Defendant Amaca Investments, Inc. owns numerous websites and associated uniform resource locators ("URLs"), including, but not limited to, those located at http://www.amacainsurance.com and http://www.carenadams.com.

10. Upon information and belief, Defendant Amaca Insurance & Financial Services, Inc. operates the website located at http://www.carenadams.com.

## FACTS

### A. Amica and the AMICA Trademarks.

11. Since Amica was founded in 1907, it has become a well-known provider of insurance and services nationwide. Amica writes over $1 billion in insurance premiums annually under the AMICA® brand for hundreds of thousands of consumers.

12. Consumers associate Amica's award winning insurance products and services with personal service, rapid claims resolutions, and careful underwriting. Among other things, Amica is well-known for its prudent investment philosophy and redoubtable business practices, which are of paramount importance in the insurance industry. The heart of Amica's entire business is its corporate identity, through its AMICA® brand, and variations thereof, that serve to identify its high quality insurance products and services to millions of consumers throughout the United States.

13. To protect the substantial goodwill associated with its insurance products and services and those offered by its related companies, Amica has applied for, and received, registrations from the United States Patent and Trademark Office ("USPTO") for many of its core marks, including: AMICA (Reg. No. 0354683, granted February 22, 1938); AMICA (Reg.

No. 0666397, granted August 26, 1958); AMICA (Reg. No. 1911774, granted May 23, 1995); THE AMICA COMPANIES (Reg. No. 2051340, granted April 8, 1997); AMICA (Reg. No. 2276586, granted September 7, 1999); and AMICA AUTO HOME LIFE (Reg. No. 2942057, granted April 19, 2005).  Each of these marks is valid and subsisting, and is incontestable as a matter of law.  (Amica's trademarks are collectively referred to as the "AMICA Trademarks.")  True and accurate copies of the registration certificates for the AMICA Trademarks are hereby attached as **Exhibit A**.

      14.     Amica has made substantially exclusive and continuous use of the AMICA Trademarks for its insurance products and services since its first use of such marks.  On information and belief, Defendants were, or should have been aware, of this use.

      15.     As a result of the considerable time, effort and money Amica has invested in developing the Amica Trademarks, and through the extensive promotion of products and rendering of services throughout the United States in connection with the AMICA Trademarks, such marks have become distinctive.

      16.     As a result of Amica's sales, service, advertising and promotion, the AMICA brand and its variants have become a household name in the insurance industry as identifying insurance products and services with the financial stability and quality services offered by Amica.

      17.     Amica advertises and promotes its products and services at a number of websites, including its primary website located at www.amica.com.  Many such users reach Amica's website as a result of searching for Amica using an Internet search engine, such as Google®, Bing®, or Yahoo!®.

55415453 v1

18.     Amica's presence on the Internet is critical to its continued success. It has vigilantly and successfully policed the Internet to removed unauthorized uses of the AMICA Trademark. Accordingly, Amica seeks, among other things, to avoid consumer confusion concerning the Amica Trademarks on the Internet.

### B.     Defendants' Unlawful Conduct

19.     In or around February, 2015, Amica learned of the URL, http://www.amacainsurance.com. The website associated with the URL contained a series of hyperlinks that led to http://agents.allstate.com/caren-adams-fontana-ca.html, the website for Defendant Caren Adams, an Allstate agent. Screen captures of Defendant Caren Adams' website are hereby attached as **Exhibit B**.

20.     The website for Caren Adams, Allstate Agent, listed an address 7950 Cherry, Ave., Ste. 110, Fontana California. The Google street-view map shows that the building associated with this address houses an Allstate office. A screen capture of the building associated with the aforementioned address is attached hereto as **Exhibit C**.

21.     On February 27, 2015, Amica sent a cease and design letter to Caren Adams and Allstate Insurance Company, demanding, in part, that both Defendant and Allstate stop using all confusingly similar uses of the AMICA Trademarks, including the designation, "AMACA" (hereinafter the "AMACA Mark"), within the URL http://www.amacainsurance.com and on the corresponding website. A copy of the February 27, 2015 cease and desist letter is attached hereto as **Exhibit D**.

22.     After the initial cease and desist was sent to Defendant and Allstate Insurance, the URL http://www.amacainsurance.com converted to a link farm, this time providing hyperlinks to several third party websites, such as Geico and Liberty Mutual among other competitors of

Amica, that advertise and sell insurance products and services that compete with Amica's insurance products and services.

23. Among the hyperlinks available on the website associated with URL, http://www.amacainsurance.com, three include unauthorized uses of the AMICA Trademarks: "Amica Car Insurance," "Amica Home Insurance" and "Amica Homeowners Insurance." Customers or prospective customers of Amica clicking on any of these Amica-branded links are directed to another list of "sponsored link advertisements" and various third party sites purporting to provide home and automobile insurance quotes from various insurance agencies. Screen captures showing the URL http://www.amacainsurance.com as a link farm to third party competitive websites are hereby attached as **Exhibit E**.

24. On March 23, 2015, Defendant, through counsel, responded to Amica's cease and desist letter, denied that use of the AMACA Mark and the domain name http://www.amacainsurance.com infringe on the AMICA Trademarks and refused to comply with Amica's demands.

25. In or around June, 2015, Amica learned of another infringing URL, http://www.carenadams.com. According to the Whois database, this URL is also owned by Amaca Investments, Inc.

26. The URL http://www.carenadams.com prominently displays "AMACA Insurance and Financial Services" in the right hand corner of the web page. Consumers who click on the "Auto" link are directed to Caren Adams' Allstate Insurance agent page. From this Allstate Insurance agent page, consumers can obtain quotes for Allstate Insurance's products and services. Screen captures of the URL http://www.carenadams.com are hereby attached as **Exhibit F**.

27. On July 30, 2015, Amica sent another cease and desist letter addressed to Defendant Caren Adams and Allstate, again demanding that both Defendant and Allstate stop using the AMACA Mark on the website associated with the URL http://www.carenadams.com and within the URL http://www.amacainsurance.com.  A true copy of this follow up cease and desist letter is hereby attached as **Exhibit G**.

28. On August 3, 2015, Defendant, through counsel, responded to the July 30, 2015 cease and desist letter via email by resending Defendant's March 23, 2015 response refusing to comply with the Amica's demands, and offered a conference call to discuss the matter.  A conference call was later held, but Defendants did not agree to cease their infringing activity.

29. On September 14, 2015, Allstate Insurance, through counsel, stated that Allstate has no ownership or control over the URLs http://www.amacainsurance.com or http://www.carenadams.com, and that Defendant Caren Adams is an independent agent.

30. Defendants continue to use the AMACA Mark on the website associated with the URL http://www.carenadams.com and within the URL http://www.amacainsurance.com.

31. The URL http://www.amacainsurance.com provides hyperlinks to several third party websites, which include competitors of Amica's insurance products and services.

32. The website associated with the URL http://www.amacainsurance.com is designed to divert Internet users (including potential and actual customers of Amica) away from Amica's website and to Defendants' websites and to other third party insurance websites for their own commercial benefit.

33. Defendants' actions create a likelihood of confusion and deception as to whether its insurance products or services originate with, or are sponsored, affiliated or approved by, Amica.

34. By using and continuing to use the AMACA Mark in relation to the URL, http://www.amacainsurance.com, and on the website associated with the URL, http://www.carenadams.com, Defendants have infringed and are infringing the AMICA Trademarks and are competing unfairly with Amica.

35. Amica has been damaged thereby.

## COUNT I
## Federal Trademark Infringement in Violation of the Lanham Act
## (15 U.S.C. §1114(a))
## All Defendants

36. Plaintiff hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 35 of this Complaint.

37. Amica is the owner of the AMICA Trademarks.

38. Through its unauthorized use of the AMACA Mark in in the website http://www.carenadams.com and through their purchase and use of the URL, http://www.amacainsurance.com, Defendants have infringed and continue to infringe Amica's rights in the AMICA Trademarks, so as to create a likelihood of confusion, or to cause mistake, or to deceive the public as to the nature, source and sponsorship of Defendants' products and services.

39. The activities of Defendants complained of herein constitute willful and intentional infringement of the AMICA Trademarks, and were commenced and continued in spite of Defendants' actual and/or constructive knowledge of Plaintiff's rights in the AMICA Trademarks and in spite of Defendants' knowledge that such activity was and is in direct contravention of Plaintiff's rights.

40. Defendants' conduct constitutes infringement of the AMICA Trademarks under 15 U.S.C. § 1114.

41. Amica has been and will continue to be irreparably harmed by Defendants' conduct.

42. By reason of the foregoing, Amica is entitled to injunctive relief against Defendants and, after trial, to recover any damages proven to have been caused by reason of Defendants' acts of infringement.

43. Defendants' willful misconduct makes this an exceptional case, entitling Amica to increased damages and to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

### COUNT II
### Unfair Competition and False Designation of Origin in Violation of the Lanham Act (U.S.C. §1125(a))
### All Defendants

44. Plaintiff hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 43 of this Complaint.

45. As a result of the acts alleged herein, Defendants have competed unfairly with Amica.

46. Defendants have realized and continue to realize unjust profits as a result of their unfair competition.

47. Through the use of the AMICA Trademarks in connection with the advertising and sale of services, Defendants have knowingly and intentionally misrepresented to the public and falsely designed the nature, origin and source of the services offered on Defendants' websites, so as to create a likelihood of confusion by the public as to the nature, source and sponsorship of the Defendants' goods and services.

48. Defendants' acts in using and infringing the AMICA Trademarks for their own financial gain constitute unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a).

49.     Amica has been and will continue to be irreparably injured by Defendants' conduct.

50.     By reason of the foregoing, Amica is entitled to injunctive relief against Defendants and, after trial, to recover any damages proven to have been caused by reason of Defendants' acts of unfair competition and false designation of origin.

51.     Defendants' willful misconduct makes this an exceptional case, entitling Amica to increased damages and to recover its attorneys' fees pursuant to 15. U.S.C. § 1117.

### COUNT III
### Cybersquatting in Violation of the Lanham Act
### (U.S.C. §1125(d))
### All Defendants

52.     Plaintiff hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 51 of this Complaint.

53.     By virtue of Amica's longstanding use of the AMICA Trademarks in interstate commerce and the considerable time, effort and money that Amica has invested in the development of the Amica Trademarks, such marks became distinctive prior to the time of Defendants' use of the URLs http://www.amacainsurance.com and http://www.carenadams.com.

54.     Defendants have developed and maintained the URL http://www.amacainsurance.com that is confusingly similar to the AMICA Trademarks.

55.     None of the Defendants has any trademark or other intellectual property rights in the URL http://www.amacainsurance.com.

56.     Defendants, in developing and maintaining the URL, http://www.amacainsurance.com, did so with the intent to divert consumers from Amica's website to Defendants' website to exploit the goodwill represented by the AMICA Trademarks

for commercial and monetary gain, and to create a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendants' website, goods and/or services.

57. Defendants committed the acts described herein, including the use of the URL http://www.amacainsurance.com, with bad faith intent to profit from the AMICA Trademarks.

58. Defendants' acts as alleged herein violate Amica's rights in its AMICA Trademarks and constitute cybersquatting in violation of 15 U.S.C. § 1125(d).

59. Amica has been and will continue to be irreparably injured by Defendants' conduct.

60. By reason of the foregoing, the URL http://www.amacainsurance.com and corresponding website should be taken down and Amica should be awarded statutory damages.

61. Defendants' willful misconduct makes this an exceptional case, entitling Amica to recover its attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT V**
**Unfair Competition**
**(Rhode Island Common Law)**
**All Defendants**

62. Plaintiff hereby realleges and incorporates by reference the allegations of Paragraphs 1 through 61 of this Complaint.

63. Defendants have developed and maintained the web page http://www.amacainsurance.com in violation of Amica's trademark rights.

64. The website http://www.amacainsurance.com is likely to confuse and mislead the public when the actual intention was to purchase Amica's product and/or services.

65. Defendants' conduct as alleged herein constitutes unfair competition in violation of Rhode Island common law.

66. Amica has been and will continue to be irreparably injured by Defendants' conduct.

67. Amica has no adequate remedy at law.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests a judgment in its favor and against Defendants ordering:

A. That Defendants, and each of their officers, directors, agents, servants, employees and representatives, and those persons in active concert of participation with them or any of them, be preliminarily and permanently enjoined and restrained from engaging in further and/or continued infringement of the AMICA Trademarks;

B. That Defendant's and each of their officers, directors, agents, servants, employees and representatives, and those persons in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from publicizing false, misleading and deceptive information concerning Amica;

C. That Defendants, and each of their officers, directors, agents, servants, employees and representatives, and those persona in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from engaging in further false advertising in connection with Amica's goods and services;

D. That Defendants, and each of their officers, directors, agents, servants, employees and representatives, and those personal in active concert or participation with them or any of them, be preliminarily and permanently enjoined and restrained from (a) using the AMICA Trademarks or any other mark, term, title, word or combination of words that is confusingly similar to the AMICA Trademarks, in connection with the marketing, sale, offering for sale,

advertisement, or promotion (including on the Internet) of insurance related products or services, and (b) using the AMICA Trademarks, or any other mark, term, title word, or combination of words that is confusingly similar to the AMICA Trademarks, in connection with any sponsored link and/or domain name.

  E. That Amica recover (a) statutory damages pursuant to 15 U.S.C. § 1125, (b) its damages sustained as a result of the acts alleged herein, (c) Defendants' profits arising from the diversion of Internet users who accessed any sponsored links generated by a keyword comprised of the AMICA Trademarks or any confusingly similar variation thereof to the websites of any third parties, (d) consequential damages, (e) its attorneys' fees, (f) its costs and disbursements; and (g) that the Court treble or otherwise increase Amica's damages pursuant to 15 U.S.C. § 1117; and

  F. That Amica be awarded such other and further relief and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Amica hereby demands a trial by jury on all issues so triable in this action.

>Respectfully submitted,
>
>AMICA MUTUAL INSURANCE COMPANY,
>By Its Attorneys
>
>
>/s/ Craig M. Scott
>Craig M. Scott, Esq. (#4237)
>Hinckley, Allen & Snyder LLP
>100 Westminster Street
>Suite 1500
>Providence, RI 02903
>(401) 274-2000 Phone
>(401) 277-9600 Fax
>cscott@hinckleyallen.com

Dated:  December 31, 2015